Christina N. Goodrich (SBN 261722)
christina.goodrich@klgates.com
Zachary T. Timm (SBN 316564)
zach.timm@klgates.com
K&L Gates LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

Attorney for Plaintiff
Epson America, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| EPSON AMERICA, INC.<br><br>Plaintiff,<br><br>v.<br><br>SUNVALLEYTEK INTERNATIONAL, INC. d/b/a VAVA,<br><br>Defendant. | Case No.  8:23-cv-00735-JVS-ADS<br><br>[Assigned to the Hon. James V. Selna]<br><br>**MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT SUNVALLYTEK INTERNATIONAL, INC. d/b/a VAVA; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF ZACHARY T. TIMM IN SUPPORT THEREOF; [PROPOSED] ORDER**<br><br>Date:     March 25, 2024<br>Time:     1:30 p.m.<br>Crtrm:   10C |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 25, 2024 at 1:30 p.m., or as soon thereafter as the matter can be heard in Courtroom 10C of the above-entitled Court, located at 411 West 4th Street, Santa Ana, California 92701, Plaintiff Epson America, Inc. ("Epson") will, and hereby does, move for entry of default judgment against Defendant Sunvalleytek International, Inc. d/b/a/ VAVA ("Vava") pursuant Rule 55 of the Federal Rules of Civil Procedure.

On April 28, 2023, Epson filed its Complaint in this Action against Vava. (ECF 1.) On May 30, 2023, Vava filed its answer through its original counsel, Scott Plamnondon (ECF 14.) On October 31, 2023, Mr. Plamondon filed a Notice of Motion and Motion to withdraw as counsel for Vava, which Epson did not oppose and which was granted on November 30, 2023. (ECF 22 & 24.) This Court ordered Vava to retain new counsel within 30 days, or else be at risk of default judgment. (ECF 24.) No new counsel has substituted in or made an appearance on Vava's behalf and, as such, entry of default was entered against Vava on January 23, 2024. (ECF 27.)

Epson now seeks entry of default judgment against Vava in the amount of $649,597.84, which represents the minimum amount Vava has profited from its infringement. Epson is unable to ascertain the precise amount of damage caused by Vava's infringement, however was able to calculate this amount based upon the list price of the accused products Vava sells, and the number of reviews for each of those products. As not every purchaser leaves a review, it is likely the total number of sales is higher.

Pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Rules 55-1 and 55-2, Vava was personally served with this notice of motion and motion, which includes the specific amount requested, more than seven days before the hearing date. (Timm Decl., ¶ 10.)

---

**MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT**

1

2      This Application is based on this Notice of Motion and Motion, the attached

3   memorandum of points and authorities, the attached declaration of Zachary T. Timm

4   and exhibits thereto, all pleadings, papers, and records in this action, and upon such

5   further evidence as may be presented at the hearing on this Motion.

6

7   Respectfully Submitted,                    **K&L Gates LLP**

8   Dated:  February 20, 2024      By:   */s/ Zachary T. Timm*

9                                          Christina N. Goodrich
                                           Zachary T. Timm

10                                         *Attorneys for Plaintiff Epson America, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT**

# Table of Contents

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................... 1

    A.    Procedural Background ........................................................... 1

    B.    Portable Consumer Projectors ............................................... 2

    C.    Epson's Projectors ................................................................. 2

    D.    Vava's False Advertising of its Projectors ........................... 3

    E.    Settlement and Vava's Continued False Advertising ............ 6

    F.    The Harm Caused by Vava ..................................................... 9

III.  JUDICIAL STANDARD ................................................................. 10

IV.   DISCUSSION .................................................................................. 11

    A.    The Procedural Requirements for Default Judgment Are Met ............... 11

    B.    The Substantive Requirements for Default Judgment Are Met .............. 11

        1.  Epson Will Suffer Prejudice Absent a Default Judgment ...................... 12

        2.  Epson's Well-Pleaded Complaint & Supporting Evidence
           Establishing Vava's Liability ................................................. 13

            a.    The False Advertising Claims are Meritorious and Well-
                Pleaded                        13

            b.    The Breach of Contract Claim is Meritorious and Well-Pleaded
                                         17

        3.  The Sum of Money at Stake is Not Disproportionately Large to the
           Seriousness of Vava's Conduct ............................................. 18

        4.  There is No Possibility of Disputed Material Facts ............................. 19

        5.  Vava's Default Was Not Due to Excusable Neglect ........................... 19

        6.  Defendant's Conduct Frustrates Policies Favoring Merit-Based
           Decisions .............................................................................. 19

    C.    The Remedies Sought by Epson Are Appropriate ................... 20

        1.  Epson is Entitled to a Permanent Injunction .................................. 20

            a.    Epson Faces Irreparable Harm that Cannot Be Fixed by
                Monetary Damages                  21

i

    b.    The Balance of Hardships Favors Epson ........................ 22

    c.    Injunctive Relief Serves the Public Interest ................. 23

  2.  Epson Is Entitled to Recover Defendant's Profits as Compensatory
      Damages Under the Lanham Act ........................................ 23

V.    CONCLUSION ............................................................. 24

CERTIFICATE OF WORD COUNT ................................................ 25

ii

**TABLES OF CONTENTS AND AUTHORITIES**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abbot Labs. v. Mead Johnson & Co.*,
  971 F.2d 6 (7th Cir. 1992) ........................................................................23

*Amini Innovation Corp. v. KTY Intern. Mktg.*,
  768 F. Supp. 2d 1049 (C.D. Cal. 2011) ............................................... 12, 13

*Coles v. Glaser*,
  2 Cal. App. 5th 384 (2016) ......................................................................17

*Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
  911 F.2d 242 (1990) ................................................................................14

*Curtis v. Illumination Arts, Inc.*,
  33 F. Supp. 3d 1200 (W.D. Wash. 2014), *aff'd*, 682 Fed. Appx. 604 (9th Cir. 2017)
  .............................................................................................................19

*Danning v. Lavine*,
  572 F.2d 1386 (9th Cir. 1978) ..................................................................17

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ................................................................................20

*Eitel v. McCool*,
  782 F.2d 1470 (9th Cir. 1986) ..............................................10, 12, 13, 19

*Elektra Entm't Grp. v. Crawford*,
  226 F.R.D. 388 (C.D. Cal. 2005) .............................................................12

*Epson Am. Inc., v. AuKing Direct d/b/a Amazon Marketplace Seller ID ATVPDKIKX0DER*,
  No. 1:23-11367-LTS (D. Mass 2023) ...........................................13, 20, 21

*Epson Am., Inc. v. Century21 Elecs.*,
  No. 216CV06877SVWFFM, 2017 WL 816009  (C.D. Cal. Feb. 15, 2017) .....passim

*Epson America, Inc. v. USA111, Inc.*
  259 F. Supp. 387 (D.S.C. 2017) ...........................................13, 21, 22

*HICA Educ. Loan Corp. v. Warne*,
  No. 11-CV-04287-LHK, 2012 WL 1156402 (N.D. Cal. Apr. 6, 2012)...................19

*Intermatic v. Toeppen*,
  947 F. Supp. 1227 (N.D. Ill. 1996)...........................................................16

*Jackson v. Sturkie*,
  255 F. Supp. 2d 1096 (N.D. Cal. 2003)....................................................20

*Landstar Ranger, Inc. v. Parth Enters., Inc.*,
  725 F. Supp. 2d 916 (C.D. Cal. 2010) ......................................................17

*Mut. Pharm. Co. v. Ivax Pharm., Inc.*,
    459 F. Supp 2d 925 (9th Cir. 1986) ....................................................... 14, 15

*PepsiCo, Inc. v. California Sec. Cans*,
    238 F. Supp. 2d 1172 (C.D. Cal. 2002) ........................................ 12, 13, 18

*Philip Morris USA, Inc. v. Castworld Prods., Inc*.,
    219 F.R.D. 494 (C.D. Cal. 2003) ................................................................ 13

*Planetary Motion, Inc. v. Techsplosion, Inc.*,
    261 F.3d 1188 (11th Cir. 2001) ................................................................... 16

*Planned Parenthood Fed. Of Am., Inc. v. Bucci*,
    C.A. No. 97 Civ 0629, 1997 WL 133313 (S.D.N.Y. Mar. 24, 1997) ....................... 16

*Rolex Watch U.S.A., Inc., v. Watch Empire LLC*,
    CV 13-09221-SJO (FFMx), 2015 WL 9690322 (C.D. Cal. Sept. 29, 2015) ...... 18, 22

*Scotts Co. v. United Indus. Corp.*,
    315 F.3d 264 (4th Cir. 2002) ...................................................................... 14

*Shanghai Automation Instrument Co v. Kuei*,
    194 F. Supp. 2d 995 (N.D. Cal. 2001) ........................................................ 19

*TeleVideo Sys., Inc. v. Heidenthal*,
    826 F.2d 915 (9th Cir. 1987) ...................................................................... 10

*Tempur Sealy Int'l, Inc. v. Seltyk Mattress Inc.*,
    No 2:22-cv-06194-ODW (PVCx), 2023 WL 3075881 (C.D. Cal. Apr. 25, 2023) ... 12

*Venture Tape Corp. v. McGills Glass Warehouse*,
    540 F. 3d 56 (1st Cir. 2008) ........................................................................ 24

*Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*,
    416 F. Supp. 3d 948 (N.D. Cal. 2019) ........................................................ 12

*Warner Bros. Home Ent. Inc. v. Jimenez*,
    No. CV 12–9160 FMO (JEMx), 2013 WL 3397672 (C.D. Cal. July 8, 2013) ......... 20

*Wecosign, Inc. v. IFG Holdings, Inc.*,
    845 F. Supp. 2d 1072 (C.D. Cal. 2012) ...................................................... 22

**Statutes**

15 U.S.C. § 1051 ................................................................................................. 13

15 U.S.C. § 1117 ........................................................................................... 23, 24

15 U.S.C. § 1125 ................................................................................................. 13

Cal. Bus. & Prof. Code § 17200 ...................................................................... 13

**Rules**

Fed. R. Civ. P. 54 ................................................................................................ 20

Fed. R. Civ. P. 55 ................................................................................................10, 11

Fed. R. Civ. P. 55(b)(2) ............................................................................................1

Fed. R. Civ. P. 8 ................................................................................................10, 20

Local Rule 55-1 .......................................................................................................10

Local Rule 55-2 .......................................................................................................11

**TABLES OF CONTENTS AND AUTHORITIES**

Plaintiff, Epson America, Inc. ("Epson"), by an through its undersigned counsel, submits this Memorandum of Points and Authorities in Support of its Motion for Entry of Default Judgment against defendant Sunvalleytek International, Inc. d/b/a Vava ("Defendant" or "Vava") pursuant to Fed. R. Civ. P. 55(b)(2) (the "Motion").

## I.    INTRODUCTION

This is a false advertising and unfair competition lawsuit involving Epson's efforts to protect its brand and consumers from Defendant's illegal and nefarious activities. As explained in great detail within Epson's pleadings, Defendant advertises and sells its products on the Internet via websites such as Amazon.com, BestBuy.com, Walmart.com, and its own webpage, https://www.vava.com (hereinafter, the "Websites"). On the Websites, Defendant falsely advertises its projectors by misrepresenting and purposefully and deceptively inflating the brightness specifications of its projectors. Brightness is the top specification a consumer considers when purchasing a projector. Epson itself tested the brightness of several of Defendant's projectors, and each tested significantly below Defendant's advertised brightness value. Accordingly, this motion seeks permanent injunctive relief in the form of a default judgment enjoining Defendant's ongoing false advertising and unfair competition, as well as actual damages related to Defendant's gains, profits, and advantages that it has obtained as a result of its unlawful acts.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Procedural Background

This case was filed on April 28, 2023. (ECF 1.) Vava answered on May 30, 2023. (ECF 15.) The Parties submitted a Joint Rule 25(f) Report on July 25, 2023. (ECF 19.) On November 30, 2023, counsel for Vava withdrew and the Court granted Vava thirty (30) days to "obtain substitute counsel and have counsel file a notice of appearance. Otherwise, it risks being subject to default judgment." (ECF 24.) Forty-nine (49) days later, On January 18, 2024 the Court, on its own motion, ordered the notice of appearance by new counsel for defendant or Epson's request for entry of

default.  (ECF 25.)  On January 22, 2024, Epson requested the Clerk enter default against Vava.  (ECF 26.)  On January 23, 2024, pursuant to Federal Rule of Civil Procedure 55(a), default was entered against Vava, for failing to plead or otherwise defend in the action.  (ECF 27.)

## B.    Portable Consumer Projectors

While previously and traditionally associated with movie theaters, projectors have become an increasingly common video display product for consumers used in home, business, and educational settings.  (ECF 1, Complaint ¶ 9.)  Today, consumers use digital projectors in the same way as television or computer screens, and are able to purchase projectors in a variety of sizes ranging from the size of a cell phone to larger, permanently-mounted projectors for home theaters.  (*Id.*, at ¶¶ 10–11.)  Within a particular projector category, such as portable consumer projectors, the quality and corresponding price of a specific projector is largely determined by its resolution and light output.  (*Id.*, at ¶ 12.)  Projector light output is measured and described in lumens.  (*Id.*, at ¶ 13.)  The higher the lumen rating, the brighter the projector, and, all else being equal, the more it will cost. (*Id.*)  The lumen rating is one of the most important and immediately recognizable projector features for consumers, and one that necessarily impacts consumer choice.  (*Id.*, at ¶ 14.)

## C.    Epson's Projectors

Epson is a leading manufacturer in the printer, professional imaging, projector, scanner, systems devices, and factory automation categories.  (*Id.*, at ¶ 6.)  In particular, Epson is recognized throughout the world and the United States as a leading projector manufacturer, and Epson has often been recognized in the industry through various product awards and other industry recognition.  (*Id.*, at ¶¶ 17-18.)  As a market leader, Epson continues to set standards for image quality, performance, and innovation with its line of multimedia projectors.  (*Id.*, at ¶ 18.)  Epson prides itself on achieving the highest customer satisfaction ratings, accomplished in large part by using the most precise testing equipment and procedures available.  (*Id.*, at ¶ 19.)

### D.   Vava's False Advertising of its Projectors

Defendant is a direct competitor of Epson in the portable consumer projector market.  (*Id.*, at ¶ 20.)  Defendant sells and offers for sale projectors to consumers throughout the United States via its own website, vava.com, as well as via various online commerce sites including, but not limited to, Amazon.com, BestBuy.com, and Walmart.com.  (*Id.*, at ¶ 20.)  Defendant sells its projectors under various models including, but not limited to, its Vava 4k UST Laser TV Home Theatre projector (the "Vava Projector").  (*Id.*, at ¶ 22.)  The advertised light output performance of the Vava Projector continues to be a moving target.  (*Id.*, at ¶ 23.)  Upon release, as a new entrant in the projector marketplace, Defendant advertised the light output value of the Vava Projector to be "6000 lumens" on Amazon.com:

## VAVA 4K UHD Laser TV Home Theatre Projector | 6000 Lumens | Ultra Short Throw | HDR10 | Built-in Sound Bar | ALPD 3.0 | Smart Android System

by VAVA

## Luminary Light Source

The VAVA 4K projector uses an incredible 6000 lumens to produce a bright image even with ambient lighting; you no longer need a pitch black room to get a good image

˅ Read more

(*Id.*, at ¶ 24.)  However, some time thereafter, Defendant changed its Amazon.com listings for the same projector, and advertised a significantly lower light output of 2500 lumens:

VAVA 4K UHD Laser TV Home Theatre Projector | Bright 2500 Lumens | Ultra Short Throw | HDR10 | Built-in Harman Kardon Sound Bar | ALPD 3.0 | Smart Android System

by VAVA

(*Id.*, at ¶ 25.)  Despite changing the title to reflect a light output of 2500 lumens, Vava continued to list the brightness of the Vava Projector as "6000 lumens" in the section of the Amazon.com page that is used to compare the brightness of competing projectors. (*Id.*, at ¶ 26.)  As follows is a screenshot of the same:

**This item** VAVA 4K UHD Laser TV Home Theatre Projector | Bright 2500 Lumens | Ultra Short Throw | HDR10 | Built-in Harman Kardon Sound Bar | ALPD 3.0 | Smart Android System

Add to Cart

| | |
|---|---|
| Customer Rating | ★★★★½ (255) |
| Price | $2,799.99 |
| Shipping | FREE Shipping. Details |
| Sold By | Amazon.com |
| Connectivity Technology | Bluetooth, USB, Triple HDMI, Wi-Fi, Optical |
| Display Technology | DLP |
| Image Brightness | 6,000 lumen |

(*Id.*)  Similarly, as follows is an online advertisement utilized by Vava after it had changed its brightness value to 2500 lumens:

VAVA ✔
Sponsored · ⊕

🔥 Get VAVA 4K Ultra Short Throw Laser Projector today for as Low as $129/Month or 0% APR & NO SALES TAX (CA excluded). With no money down and 0% APR financing, buying your dream home theater projector is easier than ever. Just select Affirm monthly payment at checkout. Check vava.com for all financing options.
✅ 4K UHD Resolution
✅ 6,000 Lumens
✅ 7.2" Ultra Short Throw Distance

(*Id.*, at ¶ 27.)

4

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant's advertisement of the Vava Projector as having "6000 lumens" is literally false as Vava's changes to the lumen value on subsequent advertisements makes clear. (*Id.*, at ¶ 28.)  Despite Defendant's current claim that the light output performance of the Vava Projector is 2500 lumens, Epson has tested various models and none had a light output of over 1951 lumens.  (*Id.*, at ¶ 30.)  Accordingly, Defendant's claim of 2500 lumens is also false.

In order to gain traction in the United States marketplace, Defendant purposefully and deceptively inflates the brightness specification of its projectors by making these statements, recognizing the importance of brightness to a consumer.  (*Id.*, at ¶ 29.)

To add to the confusion, Defendant's advertisement of the Vava Projector contains the following graphics:



Luminary Light Source
The VAVA 4K projector uses an incredible 6000 lumens (light source) to produce a bright image even with ambient lighting; you no longer need a pitch black room to get a good image



Luminary Light Source
The VAVA 4K projector uses an incredible 6000 lumens (light source) to produce a bright image even with ambient lighting; you no longer need a pitch black room to get a good image

(*Id.*, at ¶ 31.)  Through these graphics, Defendant attempts to mislead unsophisticated consumers into believing that light source brightness is the equivalent to light output of a projector.  (*Id.*, at ¶ 32.)  However, "light source" brightness is misleading and non-relevant to consumer specifications as the "light source" specification alone has no bearing on the light output performance of a projector.  (*Id.*, at ¶ 33.)

1   Vava's use of a 6000 lumen "light source" coupled with its previous

2   advertisements of a 6000 lumen light output described above is meant only to confuse

3   customers and to artificially inflate the Vava Projector's light output performance. (*Id.*,

4   at ¶ 34).

5   ### E.    Settlement and Vava's Continued False Advertising

6   Given Defendant's actions, Epson filed a lawsuit against Vava in the Federal

7   Court for the Central District of California bearing case number 21-cv-00721-JVS-ADS

8   (the "Lawsuit"). (ECF 1 (Compl.) ¶ 44.) As part of the Lawsuit, the Parties entered

9   into and executed a settlement agreement (the "Agreement"). (*Id.*, at ¶ 45.) The

10  Agreement conditioned the release of Epson's prior claims upon Defendant agreeing to

11  certain terms within the Agreement, including a process whereby disputes involving the

12  brightness of future projectors could be resolved. (*Id.*, at ¶¶ 46-47.) Defendant

13  introduced a new projector, the Vava LPD 4.0 Ultra Short Throw Triple Laser Chroma

14  (the "Chroma Projector") - to the marketplace. (*Id.*, at ¶ 48.) Defendant advertised that

15  the Chroma Projector had a color and white brightness of "2200 lumens" on

16  bestbuy.com.



17

18

19

20

21

22

23

24

25  (*Id.*, at ¶ 49.) On bhphotovideo.com, Defendant advertises the brightness value of the

26  Chroma Projector as "2500 Lumens":

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**



(*Id.*, at ¶ 50.)  On Defendant's own website, Defendant advertises the brightness value of the Chroma Projector as "2200 Lumens":



(*Id.*, at ¶ 51.)  On Walmart.com, Defendant advertises the brightness value of the Chroma Projector at "2200 Lumens":

**MEMORANDUM OF POINTS AND AUTHORITIES**



(*Id.*, at ¶ 52.)  Defendant's advertisement of the Chroma as having "2200 lumens" is literally false as Epson has tested various Chroma models and none had a light output performance near 2200 lumens.  (*Id.*, at ¶ 54.)  Accordingly, Epson contacted Defendant and activated the dispute resolution process portion of the Agreement.  (*Id.*, at ¶ 55.)  Defendant failed to produce any substantiation to support its claim of 2200 lumens.  (*Id.*, at ¶ 56.)  Given the dispute of the brightness of the Chroma Projector, the Agreement called for Defendant to cease advertising the brightness of the Chroma Projector until testing by a third party could be completed.  (*Id.*, at ¶ 57.)  Defendant refused to cease and desist advertising brightness of the Chroma Projector in breach of its Agreement.  (*Id.*)

Defendant's non-compliance of the settlement agreement is willful, as it continues to sell and falsely advertise the Chroma its own website, Vava.com and third party marketplaces.  (*Id.*, at ¶ 58.)

**MEMORANDUM OF POINTS AND AUTHORITIES**

**F.    The Harm Caused by Vava**

Defendant's actions, as described in detail above, substantially harm Epson, consumers, and the consumer projector market as a whole.  (*Id*., at ¶¶ 42-43.)  Defendant's purposeful inflation of the brightness specification of its projectors has caused significant confusion in the marketplace.  (*Id*., at ¶ 35.)  For example, consumers posted questions on the Amazon.com page for the Vava Projector due to its false advertisements of the product's light output performance:

> **Q:**    I'm confused, is this projector 2500 or 6000 lumens? If 6000 lumens, what causes such a significant drop [loss of 3500 lumens]?

> **Q:**    The description changed from 6000 to 2500 lumens. on the vava site it says its 6000 lumens. has there been a revision of the projector?

> **Q:**    I'm intending to use this for wedding videos, sometimes it will be outdoors during sunset. Is it really 6000 lumens?

(*Id.*, at ¶ 36.)    As shown by the questions above, Defendant is significantly misrepresenting the light output of its projectors to consumers and causing confusion in the marketplace.  (*Id.*, at ¶ 37.)  As a result, purchasers of Defendant's projectors are likely to be, and have actually been, misled and deceived by Defendant's literally false product labeling, descriptions, and advertisements.  (*Id.*, at ¶ 38.)  Consumers expect the represented product specifications to be accurate for Defendant's projectors, yet consumers that purchase Defendant's projectors actually receive projectors with drastically lower performance outputs than advertised.  (*Id*., at ¶ 39.)  These false and misleading misrepresentations damage Epson and the consuming public, as they are designed to entice consumers to purchase Defendant's products over Epson's products.  (*Id*., at ¶ 40.)

The natural, probable, and foreseeable result of Defendant's wrongful conduct has been to cause confusion, deception, and mistake in the consumer projector market as a whole, to deprive Epson of business and goodwill, to injure Epson's relationship with existing and prospective customers, and to divert sales of Epson projectors.  (*Id*.,

at ¶ 41.)  By means of example, after having a poor experience with Defendant's projector with an improperly inflated lumen value of "6000 lumen," the consuming public is less likely to purchase a projector with a lumen rating of 6000 lumens, as consumers will be unaware that Defendant's "6000 lumen" projector is not representative of the performance of a true 6000 lumen projector. (*Id.*, at ¶ 42.)  Instead, a consumer unsatisfied with the performance of Defendant's projector will simply purchase a television rather than a different projector.  This causes irreparable harm to Epson, as well as to the entire portable projector marketplace.  (*Id.*, at ¶ 42.)

Epson is informed and believes that Defendant's wrongful conduct has resulted in increased sales and market share of Defendant's projectors while hindering the sale and market share of Epson's projectors and damaging Epson's goodwill.  (*Id.*, ¶ 43.)  Epson has sustained and will continue to sustain irreparable damages as a result of Defendant's wrongful conduct, unless enjoined.

## III.  <u>JUDICIAL STANDARD</u>

There is a two-step process for entry of default judgment under the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 55.  First, the clerk of court enters default where a plaintiff demonstrates that a defendant has failed to plead or otherwise defend the action.  Fed. R. Civ. P. 55(a).  Second, a plaintiff must apply to the Court for a default judgment, where, as here, the plaintiff's claim is not for a "sum certain."  Fed. R. Civ. P. 55(b)(2).  In determining whether to enter a default judgment, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages.  *See* Fed. R. Civ. P. 8(b)(6); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

To be awarded a default judgment, a plaintiff must comply with the procedural requirements of Rule 55 and Local Rule 55-1.  Then, the plaintiff must show that default judgment is warranted under the factors set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV.   **DISCUSSION**

### A.   **The Procedural Requirements for Default Judgment Are Met**

Rule 55 of the Federal Rules of Civil Procedure requires that a defaulting party who has appeared in the case be served with written notice of the motion for default judgment at least seven days before the hearing.  Further, Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against which party default was entered; (2) the pleading to which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice if required under Rule 55.

Epson has complied with these procedural requirements.  Further, this Motion is accompanied by a declaration from counsel for Epson confirming that default was entered against Defendant as to Epson's Complaint on January 23, 2024; Defendant is not a minor or incompetent person; Defendant is not a servicemember on active duty, and therefore the Servicemembers Civil Relief Act does not apply; and that written notice of this Motion was properly provided to Defendant.  (Timm Decl. ¶¶ 9 -11.)

Finally, Rule 55(b)(2) requires written notice of an application for default judgment to be served on the defaulting defendant at least 7 days before the hearing.  Vava was served with a copy of Epson's Notice of Motion and Motion, and this accompanying Memorandum of Points and Authorities more than 7 days before the scheduled hearing date of March 25, 2024.  (Timm Decl., ¶ 10.)  The Notice of Motion and Motion, and this Memorandum also specify the specific amount of damages requested.  *See* Local Rule 55-2.

Accordingly, all of the procedural requirements for default judgment have been satisfied.

### B.   **The Substantive Requirements for Default Judgment Are Met**

In considering whether entry of default judgment is warranted, courts consider the "Eitel factors": (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's

substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a material factual dispute; (6) whether the default was due to excusable neglect, and (7) the strong policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "Of all the Eitel factors, courts often consider the second and third factors to be the most important." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019).

### 1. Epson Will Suffer Prejudice Absent a Default Judgment

Courts find that this factor weighs in favor of default judgment in trademark actions, where a failure to grant default judgment would leave the plaintiff without other recourse for recovery or without protection against a defendant's continuing misconduct. *See PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *Tempur Sealy Int'l, Inc. v. Seltyk Mattress Inc.*, No 2:22-cv-06194-ODW (PVCx), 2023 WL 3075881, at *4 (C.D. Cal. Apr. 25, 2023). The first *Eitel* Factor heavily favors default judgment against Defendant. In the absence of a default judgment, Epson would be entirely "denied the right to judicial resolution of the claims presented," *Elektra Entm't Grp. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005), because its legal rights are otherwise hostage to Defendant's refusal to participate in this action. Accordingly, "a default judgment is the only means available for compensating Plaintiff for [Defendants'] violations." *Amini Innovation Corp. v. KTY Intern. Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011).

Here, Defendant has made the strategic decision not to defend this action. Defendant first obtained counsel, but soon thereafter, Defendant's counsel withdrew. Defendant has failed to obtain new counsel and participate in the litigation. Instead, it has chosen to ignore the court, continue to advertise its projectors, and generate profits from the sale of those projectors. Failure to enter default judgment would sanction Defendant's unlawful conduct and flagrant disregard for Epson's legal rights, as well as condone their unwillingness to resolve the matter through the judicial process. "If the Court does not enter a default judgment, it will allow [Vava] to avoid liability by

not responding to [Epson's] claims." *Amini Innovation*, 768 F. Supp. 2d at 1054 (brackets added).  Thus, Epson will be severely prejudiced if the Court declines to enter a default judgment.

**2.    Epson's Well-Pleaded Complaint & Supporting Evidence Establishing Vava's Liability**

The second and third *Eitel* factors "are often analyzed together." B*d. of Trs. of Pac. Coast Roofers Pension Plan v. Fryer Roofing Co.*, 2017 WL 6539868, at *4 (N.D. Cal. Dec. 21, 2017).  Using these factors, the Court must examine whether the plaintiff pleaded facts sufficient to establish and succeed upon the asserted claims. *See PepsiCo*, 238 F. Supp. 2d at 1175; *Philip Morris USA, Inc. v. Castworld Prods., Inc*., 219 F.R.D. 494, 499-500 (C.D. Cal. 2003).  Here, Epson alleges claims against Defendant for: (1) false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.*; (2) violation of Business and Professions Code §§ 17200, *et seq.*; and (3) breach of contract.  (ECF 1).

**a.    *The False Advertising Claims are Meritorious and Well-Pleaded***

Epson's Complaint establishes a valid claims for false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125.  Epson's claims are identical to those already decided by various United States District Courts where defendants advertised literally false brightness values for their projectors.  *See Epson Am. Inc., v. AuKing Direct d/b/a Amazon Marketplace Seller ID ATVPDKIKX0DER,* No. 1:23-11367-LTS (D. Mass 2023); *see also Epson Am., Inc. v. Century21 Elecs.*, No. 216CV06877SVWFFM, 2017 WL 816009  (C.D. Cal. Feb. 15, 2017); *See Epson America, Inc. v. USA111, Inc.* 259 F. Supp. 3d 387 (D.S.C. 2017).

The Lanham Act prohibits "commercial advertising or promotion" that "misrepresents the nature, characteristics, [or] qualities" of a product. 15 U.S.C. § 1125(a)(1)(B).  In the Ninth Circuit, the elements that must be alleged to state a claim for false advertising are as follows: (1) in its advertisements, defendant made false

statements of fact about its own product or the product of others; (2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; (3) such deception is material, in that it is likely to influence the purchasing decision; (4) defendant caused its falsely advertised goods to enter interstate commerce; and (5) plaintiff has been or is likely to be injured as the result of the foregoing by direct diversion of sales, or by lessening of the goodwill which its products enjoy with the buying public. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 244 (1990). Epson has alleged all of these elements with specificity.

A defendant can be liable under the Lanham Act for both claims that are "literally false" and those that are "true …[yet] likely to mislead of confuse consumers." *Mut. Pharm. Co. v. Ivax Pharm., Inc.,* 459 F. Supp 2d 925, 932 (9th Cir. 1986). A literally false claim can be made either explicitly, "on its face or by necessary implication." *Id.* at 932.  The distinction because these two claims is important, because "[t]hese two different forms of falsehoods subject to an action under the Lanham Act have correspondingly different evidentiary requirements. 'Where the advertisement is literally false, a violation may be established without evidence of consumer deception.'" *Id* at 933 (quoting *Scotts Co. v. United Indus. Corp.,* 315 F.3d 264, 273 (4th Cir. 2002). "If the advertising claim is literally false, the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public." *Id.* (citation omitted).

Here, the allegations of Epson's Complaint, which are now taken as true, make clear that Defendant is making literally false claims regarding its projectors. Specifically, Defendant advertises its projectors with inflated, incorrect, and literally false brightness values – an attribute of particular importance to consumers in the market for projectors.  (*See* ECF 1, ¶¶ 14, 60.)  Epson tested the brightness of several of Defendant's projectors, and each projector tested significantly below its advertised brightness value of 6000 lumen.  (*Id.*, at ¶ 30.)  Indeed, Epson's testing of various models showed that the actual brightness value of Defendant's projectors did not exceed

1951 lumen.  (*Id.*)    Additionally and separately, Defendant advertises different brightness values for the exact same Vava Projector.  At first, it advertised the Vava Projector as 6000 lumen, then on Amazon.com it advertised "2500 lumen." Despite changing the title of the product listing with this new lumen value, it continued to list the brightness as "6000 lumen" in the section of Amazon.com that is used to compare the brightness of competing projectors.  (*Id.*, at ¶ 24-26.)  While Epson's testing showed that neither of Defendant's advertised brightness values were correct, it is common sense that even if that were not the case, at least one of these advertisements for the exact same model projector is literally false.  Accordingly, Defendant's advertisements are literally false and the first element is easily satisfied.

As to the second element, if the advertising claim is literally false, the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public. *Mut. Pharm. Co.,* 459 F. Supp 2d 933.  Even though it is not required, Epson can easily demonstrate consumer confusion with regard to Defendant's literally false advertising.  (ECF 1, ¶ 36-39.)  By advertising two different brightness values for the exact same projector model, consumers are confused and have specifically stated "I'm confused, is this projector 2500 or 6000 lumens? If 6000 lumens, what causes such a significant drop [loss of 3500 lumens]?" (*Id.*, at ¶ 16.)  "The description changed from 6000 to 2500 lumens.  On the vava site it says its 6000 lumens. [H]as there been a revision of the projector?" (*Id.*)  Consumers have no independent way to confirm the performance of the projectors, other than relying on Defendant's advertisements and representations.  As evidenced, Defendant's literally false product labeling, descriptions and advertisements deceive consumers.

Epson has established that Defendant's misrepresentation is material, in that it is likely to influence the purchasing decision of consumers.  The Court need not engage in any mental gymnastics or rely solely on Epson's allegations (which it may do in this default scenario) to determine that Defendant's misrepresentations, including, but not limited to, advertising two different brightness values for the exact same projector

**MEMORANDUM OF POINTS AND AUTHORITIES**

model, were material to consumers' purchasing decisions.  It is common sense that brightness is an inherent quality or characteristic of digital projectors.  Furthermore, Defendant's own advertisements, which prominently display the brightness values not only in the listing page titles, but also throughout the listing pages, show that brightness is a material quality of projectors.  By listing the brightness value not only in the listing page titles, but also throughout the listing pages, Defendant clearly recognizes that brightness specifications are one of the inherent qualities consumers are most likely to look at when making purchasing decisions in the projector marketplace.  (ECF 1 ¶¶ 24-41.)  The materiality of Defendant's misrepresentations is clear, and the third element is satisfied.

The fourth element, that the defendant places the false or misleading statement in interstate commerce, is satisfied.  As Epson sets forth in its Complaint, Defendant makes its misrepresentations on Amazon.com, Walmart.com, BestBuy.com, as well as on its own webpage, vava.com.  (*See, Id.*, at ¶ 20.)  In establishing a seller account on Amazon.com, developing its own website to advertise its products, and selling its products throughout the United States, including but not limited to on Walmart.com and BestBuy.com, Defendant has misrepresented the brightness values of its projectors in interstate commerce.  *See Epson Am., Inc. v. Century21 Elecs.,* No. 216CV06877SVWFFM, 2017 WL 8160095 (C.D. Cal. Feb. 15, 2017) ("The internet is generally an instrumentality of interstate commerce.") (citation omitted); *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194-95 (11th Cir. 2001) ("The distribution of [products] for end-users over the Internet satisfies the use in commerce jurisdictional predicate."); *Planned Parenthood Fed. Of Am., Inc. v. Bucci*, C.A. No. 97 Civ 0629, 1997 WL 133313, at * 3 (S.D.N.Y. Mar. 24, 1997) (*citing Intermatic v. Toeppen*, 947 F. Supp. 1227, 1239 (N.D. Ill. 1996) ("The nature of the Internet indicates that establishing a typical home page on the Internet, for access to all users, would satisfy the Lanham Act's 'in commerce' requirement."). By offering the

**MEMORANDUM OF POINTS AND AUTHORITIES**

goods for sale via online platforms, including in the state of California, Defendant's sales have caused the goods to enter interstate commerce.

Finally, Epson has established that consumers, the entire consumer projector market, and Epson have been injured, and continue to be injured, by Defendant's lessening of goodwill associated with portable consumer projectors and a direct diversion of sales. By misrepresenting and deceptively inflating the brightness specifications of its projectors, Defendant entices consumers to purchase Defendant's products over Epson's products, resulting in lost sales and market share for Epson. This deprives Epson of business and goodwill, injures Epson's relationship with existing and prospective customers, and diverts sales of Epson projectors.

> **b.**    *The Breach of Contract Claim is Meritorious and Well-Pleaded*

Epson alleges claims against Defendant for breach of the Settlement Agreement. A party's obligation under a settlement agreement is contractual. *Coles v. Glaser*, 2 Cal. App. 5th 384, 391 (2016). The complaint's allegations are to be taken as true at default, and Defendant's default functions as an admission of Epson's well–pleaded allegations of fact. *See Danning v. Lavine*, 572 F.2d 1386, 1386 (9th Cir. 1978). Epson's allegations and other evidence presented show that the Complaint contains meritorious claims supporting judgment in Epson's favor. Indeed, Epson has proffered abundant evidence of multiple breaches of the Settlement Agreement by Defendant.

The elements of a claim for breach of contract are: (1) existence of a contract; (2) performance by the plaintiff or excuse for non-performance; (3) breach by the defendant; and (4) damage to the plaintiff as a result of defendant's breach. *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (entering default judgment on breach of contract action). Here, Epson entered into a valid and enforceable Settlement Agreement with Defendant. (*See* ECF 1, ¶¶ 44-48, 55-58.) Epson complied with its obligations and performed to the extent performance was due. (*Id.* ¶ 55.) As detailed above and in the Complaint, Defendant breached the Settlement

Agreement at the outset by, among other things, falsely advertising its Chroma Projector. (*Id.*, at ¶¶ 49-53.) Pursuant to the Agreement, Epson contacted Defendant and activated the dispute resolution process portion of the Agreement. (*Id.*, at ¶ 55.) Defendant failed to produce any substantiation to support its claims for the Chroma Projector. (*Id.*, at ¶ 56.) Given the dispute, the Agreement called for Defendant to cease advertising the brightness of the Chroma Projector until testing by a third party could be completed. (*Id.*, at ¶ 57.) Defendant refused to cease and desist advertising brightness of the Chroma Projector. (*Id.*) Defendant's non-compliance of the Agreement is a material breach and directly and proximately caused Epson to suffer significant damages. (*Id.*, at ¶¶ 44-58.)

Thus, Epson has stated a meritorious claim for breach of the Settlement Agreement against Defendant.

For the reasons stated, Epson has established that the second and third Eitel factors weigh in favor of the Court entering a default judgment as to these claims.

### 3. The Sum of Money at Stake is Not Disproportionately Large to the Seriousness of Vava's Conduct

The fourth factor favors a default judgment because the sum of money Epson seeks in damages ($649,597.84) is reasonable in light of Defendant's flagrant false advertisements and ultimately, exploitation of consumers. Here, Epson seeks injunctive relief and compensatory damages. Epson is entitled to recover from Defendant the gains, profits, and advantages that it has obtained as a result of its unlawful acts. Although courts are more cautious when a large damages award is involved, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176; *see also Rolex Watch U.S.A., Inc., v. Watch Empire LLC*, CV 13-09221-SJO (FFMx), 2015 WL 9690322, at *4 (C.D. Cal. Sept. 29, 2015) ("Because the damages sought arise directly from the language of Section 1117, the amount at stake is reasonably proportionate to the harm Defendants caused."). Thus, this factor weighs in favor of a default judgment.

**MEMORANDUM OF POINTS AND AUTHORITIES**

### 4.    There is No Possibility of Disputed Material Facts

The fifth factor favors a default judgment because default has been entered.  (ECF 27.)  "When default has been entered, courts find that there is no longer the possibility of a dispute concerning material facts because the court must take the plaintiff's factual allegations as true." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014), *aff'd*, 682 Fed. Appx. 604 (9th Cir. 2017).  Moreover, Epson's Complaint alleges with specificity all the facts necessary to support its claims.  (*See generally*, ECF 1.)

### 5.    Vava's Default Was Not Due to Excusable Neglect

Under the sixth Eitel factor, the Court considers whether Defendant's default resulted from excusable neglect. *Eitel*, 782 F.2d at 1471-72. No facts suggest that Defendant's failure to participate in this action is a result of excusable neglect. *See Shanghai Automation Instrument Co v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (defendant's default when properly served with complaint and notice of entry of default not attributable to excusable neglect). Defendant was served with the Summons and Complaint, submitted an answer, and then made a strategic decision to default. Accordingly, this factor also weighs in favor of entering a default judgment against Defendant.

### 6.    Defendant's Conduct Frustrates Policies Favoring Merit-Based Decisions

The final Eitel factor considers the preference for deciding cases on the merits. *Eitel*, 782 F.2d at 1471-72. "While the policy favoring decision on the merits generally weighs strongly against awarding default judgment, district courts have regularly held that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action." *HICA Educ. Loan Corp. v. Warne*, No. 11-CV-04287-LHK, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012).  Defendant knowingly abandoned any defense of this action.  Thus, Defendant's own actions forestalled (and

**MEMORANDUM OF POINTS AND AUTHORITIES**

indeed have prevented) a decision on the merits.  Therefore, this factor is outweighed by all of the other factors, all of which favor default judgment.

## C.    The Remedies Sought by Epson Are Appropriate

Epson only seeks appropriate remedies in its Motion.  *See e.g.  Epson Am. Inc., v. AuKing Direct d/b/a Amazon Marketplace Seller ID ATVPDKIKX0DER,* No. 1:23-11367-LTS (D. Mass 2023) (granting Epson's Motion for Default and awarding Epson compensatory damages and a permanent injunction); *Epson Am., Inc. v. Century21 Elecs.*, No. 216CV06877SVWFFM, 2017 WL 8160095 (C.D. Cal. Feb. 15, 2017) (granting Epson's Motion for Default and awarding Epson compensatory damages and a permanent injunction). The relief sought is specific. *See* Fed. R. Civ. P. 8(a)(3). The relief sought is limited to the relief prayed for in the Complaint.  *See* Fed. R. Civ. P. 54(c).  Thus, Epson is entitled to the remedies it seeks in its Motion.

### 1.    Epson is Entitled to a Permanent Injunction

Defendant has demonstrated that it is indifferent to any attempt by Epson to enforce their actions. Defendant's failure to defend suggests that their "infringing activities will not cease absent judicial intervention." *Warner Bros. Home Ent. Inc. v. Jimenez,* No. CV 12–9160 FMO (JEMx), 2013 WL 3397672, at *7 (C.D. Cal. July 8, 2013); *see also Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease.").  For these reasons, injunctive relief is necessary to prevent Defendant from continuing its literally false and misleading product labeling, descriptions, and advertisements.

A permanent injunction is appropriate where a plaintiff shows: (1) irreparable harm; (2) that monetary damages are inadequate; (3) that the balance of hardships favors the plaintiff; and (4) that an injunction would benefit the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). These elements are satisfied here.

**MEMORANDUM OF POINTS AND AUTHORITIES**

1          *a.      Epson Faces Irreparable Harm that Cannot Be Fixed by*
2                    *Monetary Damages*

3          Epson has established that it has suffered—and continues to suffer—irreparable
4    harm at the hands of Defendant.  Because Defendant is offering for sale a product with
5    significantly lower brightness values than advertised, not only are consumers being
6    harmed, but so too is Epson and the entire consumer projector market. Defendant
7    misrepresents and deceptively inflates the brightness specifications of its projectors, and
8    does so knowing that consumers rely heavily on brightness values in making purchasing
9    decisions in the consumer projector market.  Defendant's false statements entice
10   consumers to purchase Defendant's products over Epson's products.  Defendant's
11   wrongful conduct deprives Epson of business and goodwill, injures Epson's
12   relationship with existing and prospective customers, and diverts sales of Epson
13   projectors.  This kind of harm is truly irreparable and weighs in favor of this Court
14   issuing a permanent injunction against Defendant.

15         The harm Epson faces is identical to that of the recently decided *Epson America,*
16   *Inc. v. AuKing* matter, whereby the Defendant made literally false statements about the
17   brightness values of its projectors and made the same strategic decision to not defend
18   the action.  The United States District Court for the District of Massachusetts entered
19   Default against the Defendant and awarded Epson compensatory damages and a
20   permanent injunction. *Epson Am. Inc., v. AuKing Direct d/b/a Amazon Marketplace*
21   *Seller ID ATVPDKIKX0DER,* No. 1:23-11367-LTS (D. Mass 2023); *see also Epson*
22   *Am., Inc. v. Century21 Elecs.*, No. 216CV06877SVWFFM, 2017 WL 8160095 (C.D.
23   Cal. Feb. 15, 2017) (finding Epson suffered irreparable harm and awarded Epson
24   permanent injunction and compensatory damages).

25         Similarly, courts have found permanent injunctions necessary where advertised
26   lumen values are literally false on their face. *See Epson America, Inc. v. USA111, Inc.*
27   259 F. Supp. 3d 387 (D.S.C. 2017).  Epson has demonstrated that Defendant's claims
28   are literally false. This court has enjoined defendants for making literally false

statements about products it sells. *See e.g.*, *Epson Am., Inc. v. Century21 Elecs.*, No. 216CV06877SVWFFM, 2017 WL 8160095 (C.D. Cal. Feb. 15, 2017) (finding "It is difficult to monetize the harm to Epson's goodwill").

                     *b.*       *The Balance of Hardships Favors Epson*

"Defendants face no hardship in being enjoined from conducting illegal activities[.]"  *Rolex Watch*, 2015 WL 9690322, at *8.  Meanwhile, without an injunction, Epson will continue to suffer irreparable harm from Defendant's literally false and misleading product labeling, descriptions, and advertisements. Defendant's false advertising should not merit any equitable consideration here. This is especially so given that Defendant has chosen not to participate in this judicial proceeding and has shown no sign of otherwise abating its conduct.  If an injunction is not granted in favor of Epson, Defendant may continue its injurious conduct simply by ignoring the lawsuit and default entered in this case.

In *Epson America Inc. v. Century21 Elecs.*, this court found that the balance of hardships favored plaintiff, because defendant was "only [] enjoined from these specific infringement and false advertisement acts. It [could] still continue to sell products without falsely advertising."  No. 216CV06877SVWFFM, 2017 WL 8160095 (C.D. Cal. Feb. 15, 2017).  In *Epson America, Inc. v. USA111, Inc.* the court found that the balance of equities weighed in favor of Epson because the Defendant "simply ha[d] no equitable interest in perpetuating the false and misleading claims.  In contract, Epson ha[d] an equitable interest in a fair and level playing field regarding specifications for consumer projectors."  Just as in *USA111, Inc.*, Epson is unable to compete fairly when Defendant is misleading consumers with false lumen claims.  *Id.*

Thus, the equities weigh heavily in favor of injunctive relief.  *See, e.g., Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012) ("[W]ithout an injunction, Plaintiff will lose profits and goodwill, while an injunction will only proscribe Defendants' infringing activities.")

**MEMORANDUM OF POINTS AND AUTHORITIES**

c.    *Injunctive Relief Serves the Public Interest*

Granting an injunction here serves the public interest by ensuring that Defendant, a bad actor in the marketplace, ceases its misconduct. Prohibiting false advertising aimed at misleading the public will "serve, rather than disserve, the public interest in truthful advertising, an interest that lies at the heart of the Lanham Act." *Abbot Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 19 (7th Cir. 1992). The public has an interest in ensuring that businesses provide accurate information in their advertisements and that they do not engage in false and misleading advertising. *Id*. The relief requested herein only requests prohibiting Defendant from deceiving the public in its advertisements, which will prevent confusion and any further harm to the public. This is precisely the kind of injunction that is squarely in the public's interest. On the other hand, if an injunction is not entered on Epson's claims, then Defendant would be rewarded for ignoring the judicial process, which would be against the public interest because it would encourage others to ignore judicial process. As such, this final factor also weighs heavily in favor of this Court issuing a permanent injunction against the Defendant.

For all of these reasons, permanent injunctive relief is necessary to mitigate and prevent further irreparable harm to Epson and consumers.

**2.    Epson Is Entitled to Recover Defendant's Profits as Compensatory Damages Under the Lanham Act**

Pursuant to 15 U.S.C. § 1117, Epson is entitled to recover from Defendant the gains, profits, and advantages that it has obtained as a result of its unlawful acts. A violation under section 1125(a) entitles a plaintiff to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. 15 U.S.C. § 1117(a). In assessing profits to be awarded, plaintiff need only prove defendant's total sales; it is a defendant's burden to prove all elements of cost or deduction. "This allocation of burdens arises from the language of the Lanham Act itself: 'In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.' 15 U.S.C. § 1117(a)." *Venture Tape*

23

**MEMORANDUM OF POINTS AND AUTHORITIES**

*Corp. v. McGills Glass Warehouse*, 540 F. 3d 56, 64 (1st Cir. 2008) ("Here, Venture met its burden by introducing tax returns showing Venture's gross sales over the relevant time period. McGills then had the burden of producing evidentiary documentation that some of those sales were unrelated to and unaided by McGills' illicit use of Venture's marks. The company produced no such evidence.").

Because Defendant's conduct has deprived Epson the benefit of discovery, Epson is unable to ascertain the precise amount of damages caused by Defendant's infringement.   However, based on Defendant's own website, there have been 152 ratings of the Vava Projector and 64 ratings of the Chroma Projector, which equals *at least* 152 sales of the Vava Projector and *at least* 64 sales of the Chroma Projector.[1] (Timm Decl., ¶¶ 12-13, Exs. A & B.)  The Vava Projector is advertised and sold for $2,799.99.  (*Id*., at Ex. A.)  The Chroma Projector is advertised and sold for 3,499.99. (*Id*., at Ex. B.)  Pursuant to 15 U.S.C. § 1117(a), Defendant's sales of the accused products are $649,597.84.  As Defendant has made the strategic decision to default in this matter, it failed to meet its burden of proving any costs to be deducted. Accordingly, Epson is entitled to a damages award of $649,597.84.

## V.    CONCLUSION

In light of the foregoing, Epson respectfully requests the Court enter default judgment in favor of Epson and against Sunvalleytek International, Inc. d/b/a Vava.


Respectfully Submitted,

**K&L Gates LLP**

Dated:  February 20, 2024        By:   */s/ Zachary T. Timm*
                                  Christina N. Goodrich
                                  Zachary T. Timm

                                  *Attorneys for Plaintiff Epson America, Inc.*

---

[1] https://www.vava.com/products/4k-ultra-short-throw-laser-projector; https://www.vava.com/products/vava-chroma (Feb. 12, 2024).

**MEMORANDUM OF POINTS AND AUTHORITIES**

# <u>CERTIFICATE OF WORD COUNT</u>

The undersigned, counsel of record for Plaintiff Epson America, Inc., certifies that this brief contains 6,695 words, which complies with the word limit of L.R. 11-6.1.

Dated:  February 20, 2024          By:   */s/ Zachary T. Timm*
                                          Zachary T. Timm

                                          *Attorneys for Plaintiff Epson America, Inc.*

**MEMORANDUM OF POINTS AND AUTHORITIES**