AO 120 (Rev. 08/10)

| TO: | Mail Stop 8<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | REPORT ON THE<br>FILING OR DETERMINATION OF AN<br>ACTION REGARDING A PATENT OR<br>TRADEMARK |
|---|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court __Central District of California__ on the following

☑ Trademarks or    ☐ Patents.    ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>8:23-cv-00735-JVS | DATE FILED<br>4/28/2023 | U.S. DISTRICT COURT<br>Central District of California |
|---|---|---|
| PLAINTIFF<br>Epson America, Inc. | | DEFENDANT<br>Sunvalleytek International, Inc. d/b/a Vava |

| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | 3,092,025 | 5/16/2006 | Seiko Epson Corporation |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment   ☐ Answer   ☐ Cross Bill   ☐ Other Pleading | | |
|---|---|---|---|
| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| Minutes [In Chambers} Granting Application for Default Judgment.  MD JS-6.  Case terminated. |

| CLERK<br>Brian Karth | (BY) DEPUTY CLERK<br>Evelyn Synagogue | DATE<br>4/23/2024 |
|---|---|---|

**Copy 1—Upon initiation of action, mail this copy to Director    Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director    Copy 4—Case file copy**

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00735-JVS-ADS | Date | April 22, 2024 |
| Title | Epson America, Inc. v. Sunvalleytek International, Inc. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings: **[IN CHAMBERS] Order Regarding Application for Default Judgment [28]**

Before the Court is Plaintiff Epson America, Inc.'s ("Epson") Application for Default Judgment. (Appl., Dkt. No. 28.) Defendant Sunvalleytek International, Inc. ("Sunvalleytek") did not file an opposition.

For the following reasons, the Court **GRANTS** the Application for Default Judgment.

## I. BACKGROUND

The following factual allegations are taken from the Complaint.

Epson and Sunvalleytek are competitors in the portable consumer projector market. (Compl. ¶ 20, Dkt. No. 1.) Sunvalleytek sells its projectors through various online retailers including Amazon.com, BestBuy.com, Walmart.com, and its own site, Vava.com. (Id.)

The brightness of a projector is represented in lumens, and a higher lumen rating generally corresponds with a higher cost, all else being equal. (Id. ¶ 13.) Sunvalleytek marketed its Vava 4K UST Laser TV Home Theatre Projector as having a light output of 6,000 lumens. (Id. ¶¶ 22–24.) Sunvalleytek later changed the title of the product to reflect a 2,500 lumen rating, but left references to 6,000 lumens in its product description and advertising. (Id. ¶¶ 26–27, 31.) Upon testing various models of the projector, Epson found that none of them had a light output performance above 1,951 lumens. (Id. ¶ 30.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-00735-JVS-ADS | Date | April 22, 2024 |
|---|---|---|---|

| Title | Epson America, Inc. v. Sunvalleytek International, Inc. |
|---|---|

Some of Sunvalleytek's advertisements misled customers by claiming a 6,000 lumen "light source," thereby inflating what consumers believe to be the projectors "light output." (Id. ¶ 34.)

On April 19, 2021, Epson filed its first Complaint in a related case, 8:21-cv-00721-JVS-ADS, alleging claims of false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.*; and violation of California Business and Professions Code §§ 17200 *et seq.* (First Compl., Dkt. No. 1, 8:21-cv-00721-JVS-ADS.) The parties reached a settlement agreement, and the Court dismissed the case with prejudice. (Dkt. No. 24.)

On April 28, 2023, Epson filed its Complaint in the instant action alleging claims of false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.*; violation of California Business and Professions Code §§ 17200 *et seq.*; and breach of contract. (Compl. ¶¶ 59–81.) On May 30, 2023, Sunvalleytek answered. (Answer, Dkt. No. 14.) On November 30, 2023, the Court granted Sunvalleytek Counsel Scott M. Plamondon's Motion to Withdraw as attorney of record. (Dkt. No. 24.) By January 18, 2024, Sunvalleytek had not substituted any counsel, and the Court directed Epson to request entry of default by February 1, 2024. (Dkt. No. 25; Req. for Entry of Default, Timm Decl., Dkt. No. 26-1.)

## II. LEGAL STANDARD

Before a court can enter a default judgment against a defendant, a plaintiff must satisfy the procedural and substantive requirements for default judgment.

### A. Procedural Requirements

For a default judgment, a plaintiff must satisfy the procedural requirements of the Federal Rules of Civil Procedure. Rule 54(c) states that a default judgment cannot grant relief that is different from the requested relief in a complaint. Fed. R. Civ. P. 54(c). "The failure to allege a specific sum in the complaint does not prevent entry of a default judgment for a certain sum or a sum that can be made certain where appropriate notice has otherwise been given." LEDTRONICS, Inc. v. LEDTRONICS, Inc., No. CV 10-05147, 2010 WL 11601182, at *8 (C.D. Cal. 2010) (citing Sony BMG Music Entm't. v. Cody, No. 08-CV-00590, 2009 WL 3650923, at *3 (E.D. Cal. 2009); see also Appleton

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:23-cv-00735-JVS-ADS                Date  April 22, 2024

Title  Epson America, Inc. v. Sunvalleytek International, Inc.

Elec. Co. v. Graves Truck Line, Inc., 635 F.2d 603, 611 (7th Cir. 1980).  Under Rule 55(a), a clerk must enter a default when a defendant has failed to plead, defend, or appear in any form.  Fed. R. Civ. P. 55(a).  Lastly, if a defaulting party has appeared in an action, then a plaintiff needs to serve a motion for default on the defaulting party.  Fed. R. Civ. P. 55(b)(2).

In addition, a party seeking a default judgment must satisfy the requirements of Local Rule 55-1.  To satisfy Local Rule 55-1, a plaintiff needs to submit a declaration establishing (1) when and against whom the clerk entered a default, (2) the pleading on which default was entered, (3) whether the defaulting party is an infant or incompetent "and if so, whether that person is represented by a guardian, committee, conservator or other representative", (4) whether the Servicemembers Civil Relief Act applies; and (5) whether the plaintiff served a notice of the motion on the defaulting party, if required by Federal Rule of Civil Procedure 55(b)(2).  L.R. 55-1.

> B.  *Substantive Requirements*

The Ninth Circuit has identified seven factors (together, the "Eitel factors") that a court considers when determining whether to grant a default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at issue; (5) the possibility of a dispute regarding material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits.  Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Taken together, the second and third Eitel factors, related to the merits of a plaintiff's claims and the sufficiency of the complaint, address whether the party seeking default judgment has stated a claim upon which it may recover.  See, e.g., Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citing PepsiCo Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172 (C.D. Cal. 2002)).

On an application for a default judgment, the factual allegations in the complaint are taken as true, with the exception of those regarding damages.  See Pope v. United States, 323 U.S. 1, 12 (1944); Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977).  "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co., 980 F.2d 1261, 1267

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00735-JVS-ADS | Date | April 22, 2024 |
| Title | Epson America, Inc. v. Sunvalleytek International, Inc. | | |

(9th Cir. 1992).

### III. DISCUSSION

    *A.    Procedural Requirements for Default*

    Epson has satisfied the procedural requirements for a default judgment against Sunvalleytek. The Application for Default Judgment requests monetary relief in the amount of $649,597.84. (Appl. at 24.) This is consistent with the relief requested in the Complaint, as required by Rule 54(c). (Compl. ¶¶ 17–18.) Epson's failure to state a specific damages sum does not prevent the entry of default judgment. See LEDTRONICS, 2010 WL 11601182, at *8. Epson also adequately served Sunvalleytek as required by Rule 55(b)(2) on February 20, 2024. (Declaration of Zachary T. Timm ("Timm Decl.") ¶ 10, Dkt. No. 28-1.)

    Epson has also satisfied Local Rule 55-1. The declaration accompanying the Application establishes that the clerk entered a default against Sunvalleytek on January 23, 2024,[1] and that the default was entered on the Motion to Withdraw in this action for not having retained new counsel within thirty days. (Id. ¶ 5–9.) The declaration also confirms that Sunvalleytek is not an infant or an incompetent person, and that the Servicemembers Civil Relief Act does not apply. (Id. ¶ 3.) Finally, Epson satisfied Local Rule 55-2. Sunvalleytek had notice of the amount sought by virtue of it being served with a copy of the Notice of Motion and Motion on February 20, 2024. (Id. ¶ 10.)

    Accordingly, the Court finds Epson has satisfied the procedural requirements to enter a default judgment.

    *B.    Substantive Requirements for Default*

    Epson has also satisfied the substantive requirements for default judgment. The Court will now address each Eitel factor individually.

---

[1] The Court notes that the clerk entered default on January 23, 2024. (Dkt. No. 27.) On January 22, 2024, Epson requested the clerk to enter default against Sunvalleytek. (Dkt. No.26.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00735-JVS-ADS | Date | April 22, 2024 |
| Title | Epson America, Inc. v. Sunvalleytek International, Inc. | | |

1. <u>The Possibility of Prejudice to the Plaintiff</u>

Under the first <u>Eitel</u> factor, courts examine whether a plaintiff will experience prejudice if they do not receive a default judgment. <u>Eitel</u>, 782 F.2d at 1472. If, absent a default, a plaintiff has no remedy, then the plaintiff will suffer prejudice. <u>Philip Morris</u>, 219 F.R.D. at 499; <u>PepsiCo</u>, 238 F. Supp. 2d at 1175.

The first <u>Eitel</u> factor favors entry of default judgment because Sunvalleytek's lack of new counsel precludes Epson from attaining a judicial resolution to this dispute. The Court granted Sunvalleytek's counsel's Motion to Withdraw and directed Sunvalleytek to "within thirty days, obtain substitute counsel" or "risk[] being subject to default judgment." (Dkt. No. 24.) Sunvalleytek did not appoint new counsel within thirty days, and over eighty days had passed by the time Epson filed the instant Application. Without another recourse for recovery, Epson will likely suffer great prejudice. <u>Philip Morris</u>, 219 F.R.D. at 499. Additionally, because, by defaulting, the Sunvalleytek is deemed to have admitted the truth of Epson's averments, the evidence before the Court established that Epson will likely suffer prejudice through the loss of sales, market share, and goodwill if default is not entered. Id. Thus, the Court finds that the first factor favors default judgment.

2-3. <u>The Merits of the Plaintiff's Substantive Claim and Sufficiency of the Complaint</u>

The second and third <u>Eitel</u> factors consider the substantive merit of the plaintiff's claim and the sufficiency of the Complaint. <u>Eitel</u>, 782 F.2d at 1471. Taken together, they "require that a plaintiff state a claim on which it may recover." <u>Landstar Ranger, Inc. v. Parth Enters., Inc.</u>, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (internal quotations omitted). To weigh these two factors, the Court must evaluate the merits of Epson's claims according to the facts as alleged in the Complaint.

a. **False Advertising**

"Section 43(a) of the Lanham Act (15 U.S.C. § 1125), prohibits the use of false designations of origin, false descriptions, and false representations in the advertising and sale of goods and services." <u>Waits v. Frito–Lay, Inc.</u>, 978 F.2d 1093, 1106 (9th Cir. 1992) (citing <u>Smith v. Montoro</u>, 648 F.2d 602, 603 (9th Cir. 1981)). The elements of a §

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:23-cv-00735-JVS-ADS                        Date   April 22, 2024

Title    Epson America, Inc. v. Sunvalleytek International, Inc.

43(a) Lanham Act claim are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. Enigma Software Grp. USA, LLC v. Malwarebyters, Inc., 69 F.4th 665, 671 (9th Cir. 2023) (citing Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997)).  To show falsity under the Lanham Act, a plaintiff must allege that "the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." Id.

Taken as true at the stage of an application for default judgment, Epson's allegations sufficiently state a claim for false advertising under the Lanham Act.  First, to satisfy the first two elements, Epson establishes that Sunvalleytek's advertisements are literally false when advertising projectors with inflated and incorrect light outputs. (Compl. ¶¶ 48–56; Appl. at 6–8; Ex. B at 21, Dkt. No. 28-3); see In re Century 21-RE/MAX Real Estate Advert. Claims Litig., 882 F. Supp. 915, 922 (C.D. Cal. 1994) ("To establish elements one and two, a plaintiff can show either 1) that the challenged advertisement is "literally false" or 2) while the advertisement is literally true, it is "likely to mislead or confuse consumers.").  Second, Epson establishes that Sunvalleytek's advertisements of different, incorrect brightness values for the same projector.  (Compl. ¶¶ 25–34.)   This deception is material because consumers look to Sunvalleytek's advertisements to learn the brightness of its products, which is likely to influence consumers because brightness is an important performance indicator when deciding which projector to purchase.  (Compl. ¶¶ 12–14, 35–42.)   Third, Epson demonstrates that Sunvalleytek caused its false statements to enter interstate commerce when it marketed its projectors with inflated and inaccurate brightness values on websites such as Amazon.com, BestBuy.com, Walmart.com, and Vava.com.  (Id. ¶ 20.) Lastly, Epson has provided a reasonable basis for concluding that it is likely to be injured by as a result of the false statements.  See In re Century 21, 882 F.Supp. at 924. Sunvalleytek's advertisements convey a brighter projection image than what its projectors are capable of producing, enticing consumers to purchase Sunvalleytek's products over Epson's and thereby depriving Epson of business and goodwill.  (Id. ¶¶ 38–41.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00735-JVS-ADS | Date | April 22, 2024 |
| Title | Epson America, Inc. v. Sunvalleytek International, Inc. | | |

Therefore, the Court finds that Epson has established a likelihood of success on the merits on its false advertising claim under 15 U.S.C. § 1125.

### b. California Business and Professions Code

California's Unfair Competition Law (UCL) prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The "unlawful" prong of the UCL treats violations of other federal, state, regulatory, or court-made law as unlawful business practices independently actionable under state law. Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc., 319 F. Supp. 2d 1059, 1074 (C.D. Cal. 2003) (citation omitted). An unfair business practice under the UCL is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008). Finally, a business act is fraudulent within the meaning of § 17200 if "members of the public are likely to be deceived." Comm. on Children's Television v. Gen. Foods Corp., 35 Cal. 4th 197, 211 (1983).[2] Claims brought under the fraudulent prong under the UCL or sounding in fraud must satisfy Rule 9(b). Faulk v. Sears, Roebuck & Co., No. C 11-2159, 2011 WL 5521177, at *5 (N.D. Cal. Nov. 14, 2011); Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that where plaintiff alleges unified course of fraudulent conduct and relies entirely on that conduct as the basis of the claim, the claim is grounded in fraud and must satisfy Rule 9(b)).

In its Application, Epson makes no argument concerning its UCL claim other than to state that it alleges a UCL claim and that it establishes a valid claim. (Appl. at 13.) In the absence of argument, the Court has little basis from which to conclude a likelihood of success on the merits. Accordingly, the lack of support for a likelihood of success on the merits of the UCL claim weighs against default judgment.

### c. Breach of Contract

In California, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3)

---

[2] This is a different standard from what is required for common law fraud.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-00735-JVS-ADS | Date | April 22, 2024 |
|---|---|---|---|

| Title | Epson America, Inc. v. Sunvalleytek International, Inc. |
|---|---|

defendant's breach, and (4) the resulting damages to the plaintiff." Oasis West Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011).

Epson's allegations sufficiently state a claim for breach of contract. First, Epson establishes that the parties entered into and executed a settlement agreement. (Compl. ¶¶ 44–47.) Second, Epson alleges that it performed in contacting Sunvalleytek to "activate[] the dispute resolution process portion of the Agreement" in response to Sunvalleytek's advertisement of 2200 lumen performance. (Id. ¶¶ 54–55.) Third, Epson alleges breach in Sunvalleytek's false advertisement of projector brightness output and refusal to "cease advertising brightness of the [projector] until testing by a third party could be completed." (Id. ¶¶ 56–58.) Fourth, as established *supra*, Epson alleges that the breach deprived it of sales and goodwill. (Id. ¶¶ 38–41.)

Thus, the Court finds that the Complaint is sufficient to support a likelihood of success on the merits of Epson's claim for breach. Because two of the three claims demonstrate a likelihood of success, the second and third Eitel factors therefore weigh in favor granting default judgment.

    4.    <u>The Sum of Money at Issue</u>

The fourth Eitel factor examines whether a sum of money at stake is proportionate to the plaintiff's harm. Landstar Rager, Inc., 725 F. Supp. 2d at 921. In addition to injunctive relief, Epson seeks compensatory damages to recover Sunvalleytek's "gains, profits, and advantages that it has obtained as a result of its unlawful acts." (Appl. at 18.) Epson did not include a damages amount in its Complaint. (See Compl.) In its Application, Epson seeks a damages award of $649,597.84. (Appl. at 24.)

Epson calculates damages by multiplying the 152 ratings of the Vava Projector and 64 ratings of the Chroma Projector on Sunvalleytek's website with the costs of the projectors, $2,799.99 and $3,499.99 respectively. (Id.) Epson reasoned that while it "is unable to ascertain the precise amount of damages caused by [Sunvalleytek's] infringement" in the absence of discovery, it could determine at least some sales based on the ratings of its projectors on its website. (Id.)

Epson's approach, as resourceful as it is, still reflects a largely speculative damages calculation. There is no guarantee that the ratings on Sunvalleytek's website

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:23-cv-00735-JVS-ADS                     Date  April 22, 2024

Title  Epson America, Inc. v. Sunvalleytek International, Inc.

reflect actual sales of its projectors, nor that those leaving comments actually paid the retail prices Epson used to calculate damages.  There is also no guarantee that the individuals who purchased these projectors did so having encountered an inaccurate lumen rating and should be counted in the damages calculation.  As the exhibits attached to the declaration show, the advertising of the projectors has at times been accurate.  Exhibit A contains screenshots of the marketing for the Vava Projector from February 20, 2024, but it is advertised with an unchallenged 1800 lumen rating.  Moreover, there is no date and time associated with the various screenshots in Epson's filings, leaving the Court without information as to when the advertised lumen ratings were displayed and when they changed.  At most, the Complaint states that "[s]ometime thereafter," the advertising changed.  (Compl. ¶ 25.)  Epson may not lay claim to damages for projectors sold with accurate lumen rating advertisements, but it makes no attempt to parse them out.  Moreover, Epson does not put forward any allegations or declarations quantifying its harm and allowing the Court to determine the damages' proportionality.

Accordingly, this factor weighs against granting the Application.

### 5.     The Possibility of a Dispute Regarding Material Facts

The fifth Eitel factor assesses the possibility of a dispute regarding material facts.  "Upon entry of default, the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true."  PepsiCo, 238 F. Supp. 2d at 1175.  In its Answer, Sunvalleytek denied many of the factual allegations made by Epson in its Complaint, including that Sunvalleytek had advertised an inaccurate lumen rating, that some of the advertisements included in Epson's Complaint were published by Sunvalleytek, and that Epson's tests revealed that Sunvalleytek's projectors did not produce a light output near 2,200 lumens.  (See Ans. ¶¶ 40, 49–52, 54.)  As established *supra*, the damages amount set forth in the Application is speculative and thereby subject to a dispute of material fact.  Accordingly, this factor weighs against granting the Application.

### 6.     Whether the Default Was Due to Excusable Neglect

The sixth Eitel factor considers whether the default was due to excusable neglect.  Eitel, 782 F.2d at 1472.  The possibility of excusable neglect is remote when the defendant has been properly served or is aware of the lawsuit.  Wecosign, Inc. v. IFG

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:23-cv-00735-JVS-ADS                          Date  April 22, 2024

Title  Epson America, Inc. v. Sunvalleytek International, Inc.

Holdings, Inc., 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012).  Here, Sunvalleytek has appeared in this suit and has been properly served.  Although the thirty-day deadline has passed, Sunvalleytek has not replaced counsel following its prior counsel's withdrawal.  The Court finds that it is unlikely that excusable neglect played a part in default.  This factor therefore weighs in favor of granting the Application.

       7.     The Strong Policy Favoring Decisions on the Merits

The final Eitel factor recognizes that "[c]ases should be decided upon their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  Where a defendant fails to answer the Complaint, however, a decision on the merits is "impractical, if not impossible."  PepsiCo, 238 F. Supp. 2d at 1177.  As noted, Sunvalleytek answered the Complaint.  Sunvalleytek has not substituted new counsel, however, and it cannot thus continue litigating without having done so.  Given Sunvalleytek's failure to defend against this action, the Court finds that a decision on the merits in this case is impractical.  Accordingly, and the final factor weighs in favor of entering default in this case.

       8.     Conclusion Regarding Eitel Factors

As discussed, the majority of the factors weigh in favor of entering judgment in favor of Epson, particularly with respect to the merits of the false advertising and breach of contract claims in factors two and three.  See Federal Nat. Mortg. Ass'n v. George, No. 14-1679, 2015 WL 4127958, *3 (C.D. Cal. July 7, 2015) ("The merits of the plaintiff's substantive claim and the sufficiency of the complaint are often treated by courts as the most important Eitel factors." (internal citation omitted)).  Therefore, weighing all the Eitel factors, the Court finds that entry of default judgment against Sunvalleytek is appropriate at this time.

    C.    *Remedies*

Although the Complaint states sufficient factual allegations to support default judgment, the Court notes that Epson has not provided proper support for the remedies sought.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:23-cv-00735-JVS-ADS                           Date  April 22, 2024

Title   Epson America, Inc. v. Sunvalleytek International, Inc.

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir. 1987) (quotation marks omitted). The "[p]laintiff has the burden of proving damages through testimony or written affidavit." See Bd. of Trustees of the Boilermaker Vacation Tr. v. Skelly, Inc., 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005). Moreover, the movant seeking default judgment must prove the damages sought, and although the Court may hold an evidentiary hearing to determine the amount of damages, no hearing is necessary "if the amount of damages can be determined from definite figures contained in the documentary evidence or in detailed affidavits." Bravado Int'l Grp, Merch. Servs., Inc. v. Quintero, No. 2:13-cv-00693-SVW-SS, 2013 WL 12126750, at *4 (C.D. Cal. Nov. 27, 2013) (citation omitted).

Epson seeks $649,597.84 in monetary damages and a permanent injunction. The Court assesses the propriety of awarding each form of relief below.

    1.    Sunvalleytek's Profits

Section 1117 of title 15 of the U.S. Code specifies the damages available for Epson's section 1125 claims:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:23-cv-00735-JVS-ADS                             Date   April 22, 2024

Title   Epson America, Inc. v. Sunvalleytek International, Inc.

> find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117.

As discussed above, the Court finds Epson's request of $649,597.84 speculative. Epson has provided screenshots of the Vava website, reflecting the number of reviews of the projectors written by users. (See Exs. A, B.) The screenshots display an aggregate number of reviews that corresponds with the number Epson used to calculate damages, 152 of the Vava Projector and 64 for the Chroma Projector. Epson arrived at its $649,597.84 total by multiplying the retail price of each projector by the number of reviews displayed on the site. The Vava Projector is sold for $2,799.99, which multiplied by 152 reviews, results in $425,598.48. The Chroma Projector is sold for $3,499.99, which multiplied by 64 reviews, results in $223,999.36. Adding together those two totals yields $649,597.84.

In the screenshots, only a selection of the reviews are actually displayed, 7 for the Vava Projector and 8 for the Chroma Projector. Of those displayed reviews, 4 of the 7 Vava Projector reviews are from "verified customers" and 5 of the 8 Chroma reviews are similarly "verified." The site's delineation between the credibility of reviews raises the specter that some unverified reviews may be written by those who had not purchased the projector, casting doubt on Epson's calculation of sales. At the same time, it is possible those reviews were left by customers who purchased projectors on other websites and did not thus receive a "verified customer" label. On the other hand, not all purchasers write reviews. Whereas the consideration of unverified reviews risks counting those who did not purchase, the reliance on reviews alone cuts the other way and risks undercounting overall purchases.

Epson does not cite any analogous cases in which a plaintiff relies on product reviews to calculate sales sufficient to sustain damages on an application for default judgment. Epson cites only a First Circuit case, Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 64 (1st Cir. 2008), in which a plaintiff introduced tax returns to show gross sales. In terms of reliability, online product reviews pale in comparison to tax returns. The Court recognizes that due to Sunvalleytek's lack of participation in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00735-JVS-ADS | Date | April 22, 2024 |
| Title | Epson America, Inc. v. Sunvalleytek International, Inc. | | |

litigation, however, Epson cannot rely on discovery to learn Sunvalleytek's profits and thereby calculate damages. While the use of product reviews is indeed speculative, it is nevertheless reasonable given the dearth of available evidence.

As reasonable as the method may be given the circumstances, the Court nevertheless finds that Epson has not provided adequate documentation. Despite relying on projector reviews to calculate its damages, Epson has provided documentation of only one page of projector reviews for each product. As indicated by the screenshots provided, the other pages of reviews are indeed publicly accessible, but they have not been submitted in the Court to substantiate the overall total.

Epson cites a District of Massachusetts case, Epson America, Inc. v. AuKing, No. 1:23-113670-LTS (D. Mass. Jan. 3, 2024), as "identical" to the harm it faces here. In AuKing, Epson brought a similar false advertising claim against defendant AuKing for advertising projectors with an inflated lumen rating. Epson sought similar remedies: a permanent injunction and AuKing's profits. While the court granted Epson's motion for default judgment in that case, it did so on a different set of evidence. There, Epson filed with its motion an accounting of all of AuKing's sales on Amazon.com.

In another case cited by Epson, involving Epson pursuing damages under section 1117(a), it requested in its motion for default judgment to take limited post-judgment discovery to subpoena Amazon.com to determine the defendant's infringing sales. Epson Am., Inc. v. Century21 Elecs., No. 2:16-cv-06877-SVW-FFM, 2017 WL 8160095, at *6 (C.D. Cal. Feb. 15, 2017). The court allowed Epson to "conduct discovery in the form of a subpoena to Amazon.com to determine the total sales of the Defendant." Id. The court noted that Epson "may not have access to the exact costs of the Defendant, but [Epson's] damages calculation must at least account for the costs in some way." Id.

Despite the ingenuity of Epson's review-based calculation, it falls far short of the documentation that sufficed in AuKing. The lack of documentation of Sunvalleytek's profits here more closely resembles the dearth of information in Century21. Thus, a similar approach is warranted.

Accordingly, the Court finds that Epson has not provided adequate documentation and calculations in the proper form. Because Epson has not proven the amount it seeks

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00735-JVS-ADS | Date | April 22, 2024 |
| Title | Epson America, Inc. v. Sunvalleytek International, Inc. | | |

in damages, the Court **DENIES** entry of judgment for inadequate showing of damages. Epson may conduct limited discovery, in the form of a subpoena to the retailers named in the Complaint (Amazon.com, BestBuy.com, Walmart.com, and Vava.com), to determine Sunvalleytek's sales of the Vava Projector and Chroma Projectors advertised with inaccurate lumen ratings.

   2.  <u>Permanent Injunction</u>

 To obtain a permanent injunction, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

<u>eBay Inc. v. MercExchange, LLC</u>, 547 U.S. 388, 391 (2006). The Court's "decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." <u>Id.</u>

 Epson has adequately established all of the elements necessary for injunctive relief. Epson argues that it has suffered irreparable harm because Sunvalleytek's conduct "deprives Epson of business and goodwill, injures Epson's relationship with existing and prospective customers, and diverts sales of Epson projectors." (Appl. at 21.) Epson contends that because Sunvalleytek sells "a product with significantly lower brightness values than advertised," consumers, Epson, and the entire consumer projector market are harmed. (<u>Id.</u>) Epson cites <u>AuKing</u> and <u>Century21</u> for support, as well as <u>Epson America, Inc. v. USA111, Inc.</u>, 259 F. Supp. 3d 387 (D.S.C. 2017), in which courts have granted permanent injunctions under similar circumstances.

 First, Epson has shown a likelihood of success on the merits of its claims for breach of contract and false advertising under 15 U.S.C. § 1125. Second, Epson is likely to suffer irreparable injury absent an injunction. The fact that Sunvalleytek did not replace its attorney and has ceased its participation in this litigation suggests that Epson would not be able to recover or otherwise stop infringement absent a permanent injunction. Third, monetary damages are inadequate because without equitable relief,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00735-JVS-ADS | Date | April 22, 2024 |
| Title | Epson America, Inc. v. Sunvalleytek International, Inc. | | |

Sunvalleytek can still advertise its projectors with inaccurate lumen ratings. Fourth, the balancing of the harms favors Epson. The only harm of an injunction to Sunvalleytek would be an end to the advertisement of inaccurate lumen ratings for its projectors. Meanwhile, absent an injunction, Epson would suffer continued harm in the form of lost sales, goodwill, and control of its products. Finally, the public interest would be served because the public is entitled to the accurate specifications of the products they purchase.

Accordingly, the Court **GRANTS** the permanent injunction.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Application for Default Judgment. Sunvalleytek is hereby immediately and permanently enjoined from engaging in or performing the following act:

(1) Selling and/or advertising its projectors with false, inaccurate, or misleading lumen ratings.

Epson shall file supplemental brief on the proper calculation of the Sunvalleytek's profits as soon as discovery is complete. Epson shall submit a proposed judgment consistent with this Order.

**IT IS SO ORDERED.**

The Court finds that oral argument would not be helpful in this matter. Fed. R. Civ. P. 78; L.R. 7-15. Accordingly, the Court **VACATES** the April 29, 2024, hearing